## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| CHARLES WILSON, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 15-00428-N |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
|     Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Social Security Claimant/Plaintiff Charles Wilson has brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying his applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*., and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*.  With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73.  (*See* Docs. 17, 18).

Upon consideration of the parties' briefs (Docs. 12, 13, 14) and the administrative record (Doc. 11) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])"),[1] the Court finds that the Commissioner's decision is

---

[1] With the Court's consent, the parties jointly waived the opportunity for oral argument. (*See* Docs. 16, 19).

due to be **AFFIRMED**.

## I.     Background

On April 19, 2012, Wilson filed applications for DIB and SSI with the Social Security Administration ("SSA"),[2] both alleging disability beginning February 1, 2012.[3]   (R. 59).   After his applications were initially denied, Wilson requested a hearing, which was held before an Administrative Law Judge ("ALJ") for the SSA on September 30, 2013.   (R. 91).   On January 31, 2014, the ALJ issued an unfavorable decision on Wilson's applications, finding him "not disabled" under the Social Security Act.   (*See* R. 56 – 72).

Wilson requested review of the ALJ's decision by the Appeals Council for the SSA's Office of Disability Adjudication and Review, also submitting new evidence for the Council's consideration.   The Commissioner's decision on Wilson's applications became final when the Appeals Council denied Wilson's request for review on June 25, 2015.   (R. 1 – 6).   On August 21, 2015, Wilson filed this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final

[2] The Social Security Act's general disability insurance benefits program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income is a separate and distinct program.   SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).

[3] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file.   20 C.F.R. § 416.202–03 (2005).   For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured.   42 U.S.C. § 423(a)(1)(A) (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

decision. (Doc. 1). *See* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.   Standard of Review

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' "

3

*Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))).  " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, we must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons.  [The court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted).  *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").  "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Moreover, "[t]here is no presumption…that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid.  Instead, [the court] conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990))

(internal citation omitted).  In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)).

> Eligibility for DIB and SSI requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. Feb. 11, 2015) (per curiam) (unpublished).[4]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014).  *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[5]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination.  Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging

---

[5] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, but importantly, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

Where, as here, the ALJ denied benefits and the Appeals Council denied review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. "[W]hen the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). If the applicant attacks only the ALJ's decision, the Court may not consider evidence that was presented to the Appeals Council but not to the ALJ. *See id.* at 1324.

### III.    Claims on Judicial Review

1. "The ALJ erred in rejecting the opinion of the treating physician, Roseanne Cook, M.D., and the opinion of the consultative examiner, Huey Kidd, D.O."

2. "The ALJ failed to consider [Wilson's] impairments in combination."

3. "The ALJ failed to properly apply the three-prong pain standard."

(Doc. 13 at 1).

## IV.   Analysis

At Step One, the ALJ determined that Wilson was insured through December 31, 2014, and had "not engaged in substantial gainful activity since February 1, 2012, the alleged [disability] onset date..." (R. 61). At Step Two, the ALJ determined that Wilson had the following severe impairments: morbid obesity, mild-to-moderate osteoarthritic changes, bilateral knees, lumbago, and diabetes. (R. 61 – 63). At Step Three, the ALJ found that Wilson did not have an impairment or combination of impairments that meets or equals the severity of one of the specified impairments in the relevant Listing of Impairments. (R. 63 – 64).

At Step Four,

the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step...20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Wilson had the RFC "to perform light work as defined in 20 CFR 404.1567(b) except [Wilson] can sit at least three hours without interruption and a total of at least six hours over the course of an eight-hour workday[;] can stand and or [sic] walk a total of two hours combined over the course of an eight-hour workday[;] does not suffer any manipulative limitations[;] can occasionally use his lower extremities for pushing, pulling, and the operation of controls[;] cannot climb ladders, ropes, scaffolds, or poles[;] can occasionally climb ramps and stairs[;] can occasionally stoop[;] can occasionally balance, crouch, and kneel[;] cannot crawl[;] can occasionally work in extreme cold[;] can occasionally work in wetness[;] cannot work in humidity, or extreme heat[;] can occasionally work in dusts, gases, fumes, and odors[;] cannot work in poorly ventilated areas[;] cannot work at unprotected heights[;] cannot work with operating hazardous machinery[;] can occasionally operate motorized vehicles[;] can occasionally work while exposed to vibration[;] can at least perform simple, routine, and repetitive work activity, as well as attend all customary work pressures over the course of an eight-hour workday with the following exceptions[;] can perform production rate work; however, the claimant cannot perform work activity that requires his

response to rapid and/or frequently multiple demands[; and c]hanges in [his] work activity and work setting must be infrequent and gradually introduced."  (R. 64). Based on this RFC, the ALJ determined that Wilson was unable to perform any past relevant work.  (Doc. 70).  At Step Five, the ALJ then determined that there exist significant numbers of jobs in the national economy that Wilson can perform given his RFC, age, education, and work experience.  (R. 71 – 72).  Thus, the ALJ found that Wilson was not disabled under the Social Security Act.  (R. 72).

### A.   Claim 1 (Dr. Cooke and Dr. Kidd's Opinions)

Evidence considered by the Commissioner in making a disability determination may include medical opinions.  *See* 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2).  " 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' "  *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).  "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians."  *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. Sept. 26, 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)).  "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1)

whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization.   These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. Sept. 30, 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)).

The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth*, 703 F.2d at 1240.  *Accord, e.g.*, *Anderson v. Comm'r of Soc. Sec.*, 427 F. App'x 761, 763 (11th Cir. 2011) (per curiam) (unpublished).  However,

> the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Therefore, when the ALJ fails to "state with at least some measure of clarity the grounds for his decision," we will decline to affirm "simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir.1984) (per curiam). In such a situation, "to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Cowart*, 662 F.2d at 735 (quoting *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979)) (internal quotation marks omitted).

*Winschel*, 631 F.3d at 1179.

"A 'treating source' (i.e., a treating physician) is a claimant's 'own physician,

psychologist, or other acceptable medical source who provides[], or has provided[],[ the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant].' " *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 591 (11th Cir. May 2, 2006) (per curiam) (unpublished) (quoting 20 C.F.R. § 404.1502). "Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight.' " *Winschel*, 631 F.3d at 1179 (quoting *Lewis*, 125 F.3d at 1440). That is so because treating sources are likely in a better position "to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.' With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1240-41) (internal citation omitted). *See also, e.g.*, *Bloodsworth*, 703 F.2d at 1240 ("[T]he opinion of a treating physician may be rejected when it is so brief and conclusory that it lacks persuasive weight or where it is unsubstantiated by any clinical or laboratory findings. Further, the Secretary may reject the opinion of any physician when the evidence supports a contrary conclusion." (citation omitted)).

In evaluating Wilson's applications, the ALJ considered medical records and opinions from treating physician Dr. Roseann Cook and from consultative examining physician Dr. Huey Kidd.  The ALJ summarized Dr. Cook's records and opinions as follows:

> Records from the claimant's treating physician, Roseann Cook, M.D., in February of 2012 reflect treatment for uncontrolled diabetes, hypertension and knee pain (Exhibit B2F/p.11).  The record indicated the claimant stood 6'1" tall, weighed 313 pounds with a body mass index over 40 (Id. at p.2).  A care plan was developed and he was treated conservatively with medication.  The following month his diabetes mellitus was controlled.  At that time, he was diagnosed with hypertension, obesity and osteoarthritis (Id. at p.39).  The claimant received one among several other injections to his knee joint at that visit.
>
> …
>
> The medical evidence showed periodic treatment for the claimant's physical impairments throughout the remainder of the 2012-year (Exhibit B9F).  In January of 2013, his treating physician, Dr. Cook assessed the claimant with morbid obesity, symptomatic backache, improved hypertension, and improved diabetes mellitus (Exhibit B9F/p.21).  A few months later in May of 2013, she noted the claimant weighed 318 pounds with a BMI of 41.95 that his morbid obesity was worse, and counseled the claimant about his diet (Id. at p.10).  Most notably, she advised the claimant **to exercise** three times per week.  His blood pressure was 124/87, which marked continued improvement.  She assessed the claimant with morbid obesity, diabetes mellitus, uncomplicated and improved.  Dr. Cook further diagnosed him with polyneuropathy in diabetes and symptomatic disturbance in vision.
>
> …
>
> Dr. Cook … completed a Medical Source Statement on September 19, 2013 that significantly disabled the claimant based on lumbago, osteoarthritis and morbid obesity … Most notably she indicated the claimant could **not** perform pushing and pulling movement (arm and/or leg controls); climbing (stairs or ladders) and balancing; operate a motor vehicle or work with or around hazardous machinery.  Dr. Cook further indicated the claimant's impairments or treatment would

cause him to be absent from work more than three times a month.[6]

(R. 66 – 68).

Fulfilling the requirement that he "state with particularity the weight given to [Dr. Cook's] medical opinions and the reasons therefor[,]" *Winschel*, 631 F.3d at 1179, the ALJ "afford[ed] little weight to Dr. Cooks' [sic] conclusions[,]" explaining as follows:

> The undersigned finds Dr. Cook's statements are simply not consistent with her own record for the claimant not to mention the other evidence of record.  There was no evidence found to suggest the claimant had disabling back pain.  At the Dr. Cook [sic] most recent and last examination of the claimant in May of 2013, she did not diagnosed [sic] the claimant with two of the conditions (lumbago and osteoarthritis) she claimed in the medical source statement disables the claimant.  Additionally, the Dr. Cook's [sic] treatment records do not reflect that she ordered x-rays or a MRI of the claimant back [sic]; however, she concluded this to be a disabling impairment.

> The undersigned notes that the consultative examiner [Dr. Kidd] whom thought the claimant was disabled because of his knees, made no mention of any back problems (Exhibit B4F).  Moreover, the claimant did not report any back problems to the consultant examiner.  Nevertheless, Dr. Cook concluded that the claimant could not sit for an hour.  She ruled out the use of his arms for pulling, pushing, but there is no evidence to suggest any manipulative limitation, especially if the claimant is seated.  Dr. Cook also made contradicting statements on the Clinical Assessment of Pain form wherein she indicated medication would aid in reducing pain with no side effects or reduction in level of functioning; however, she conveyed in the same form that the claimant's pain prevented him from maintaining attention,

---

[6] The ALJ essentially repeats this summary of Dr. Cook's Medical Source Statement later in his decision, with some insubstantial variations.  (*See* R. 69).  Indeed, in what appears to be a case of poor editing, the ALJ's decision essentially contains two versions of its discussion of Dr. Cook and Dr. Kidd's medical record and opinions.  However, the differences between the two versions are largely stylistic, and they do not contradict each other.  Wilson has not asserted error on the basis of the ALJ's editing prowess *vel non*, and the Court is sufficiently able to follow the ALJ's reasoning.  In quoting relevant sections of the ALJ's decision, the Court has made reasonable efforts to avoid including duplicative passages.

concentration, or pace for periods of at least two hours.  Dr. Cook's findings in the Medical Source Statement and Clinical Assessment of Pain for the claimant are not supported by her treatment records of the claimant or by the other evidence of record.

…

… The undersigned also finds it interesting that although Dr. Cook opined the claimant could not work due to lumbago, osteoarthritis and morbid obesity yet she made no mention of a vision or hearing impairment for the claimant.

Dr. Cook apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported.  Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.  As such, the undersigned … finds no reason why the claimant cannot perform sedentary work.

(R. 66 – 70).

Wilson presents three arguments why the ALJ erroneously discounted Dr. Cook's opinions: (1) the ALJ mischaracterized Dr. Cook's opinion as being based entirely on Wilson's lumbago (i.e. lower back pain) and did not consider the impairments that Dr. Cook's opinions asserted were disabling – lumbago, osteoarthritis, and morbid obesity – in combination; and (2) the ALJ "misrepresented" Dr. Cook's May 2013 treatment notes as being from her "last examination" of Wilson and as not containing indications of lumbago or osteoarthritis; and (3) Dr. Cook's opinions are bolstered by those of Dr. Kidd. Having considered these arguments, the Court finds that substantial evidence supports the ALJ's decision to assign "little weight" to Dr. Cook's opinions.

As set forth above, the ALJ noted specific examples of how Dr. Cook's

opinions were both internally inconsistent and inconsistent with other record evidence.  While the strength of these inconsistencies as good cause to reject the opinion is debatable standing alone, the ALJ also observed that Dr. Cook "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported."  Wilson fails to address this additional reason for discounting Dr. Cook's opinion, which also constitutes good cause to reject a treating physician's opinion.  *See Freeman v. Barnhart*, 220 F. App'x 957, 960 (11th Cir. Mar. 23, 2007) (per curiam) (unpublished) (one "factor[] that may weigh in favor of discounting a treating physician's opinion" is "when the opinion appears to be based primarily on the claimant's subjective complaints of pain." (citing *Crawford*, 363 F.3d at 1159); *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 F. App'x 783, 788 (11th Cir. Feb. 26, 2015) (per curiam) (unpublished) ("Substantial evidence supports the ALJ's stated reasons, first, because the [treating ]physician's opinion did not appear to be based on any objective medical evidence, such as medically acceptable clinical diagnostic techniques or laboratory findings, and, second, no such evidence was part of the record before the ALJ. *See Crawford,* 363 F.3d at 1158; *Lewis,* 125 F.3d at 1440. Instead, he provided only conclusory statements that certain activities would aggravate Costigan's chronic neck and low back pain or based his findings on Costigan's self-reports of symptoms."); *Markuske v. Comm'r of Soc. Sec.*, 572 F. App'x 762, 766 n.3 (11th Cir. July 17, 2014) (per curiam) (unpublished) (" 'A treating physician's report may be

discounted when it is not accompanied by objective medical evidence or is wholly conclusory.' *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1159 (11th Cir. 2004) (quotation marks omitted). Thus, an ALJ may discount a treating physician's opinion where it 'appears to be based primarily on [the claimant's] subjective complaints of pain.' *Id.*"). As the Commissioner correctly notes in her brief, Dr. Cook answered "no" when asked on the opinion form if her "diagnoses in this case [were] confirmed by objective medical findings[,]" (R. 461), and the ALJ noted that Dr. Cook did not attempt to support her opinions by ordering x-rays or an MRI (R. 68 – 69). Taken together, the ALJ's articulated reasons for discounting Dr. Cook's opinions are supported by substantial evidence.

Wilson asserts that Dr. Cook's opinions are bolstered by those of consultative examiner Dr. Kidd. However, the ALJ did not err in assigning only limited weight to Dr. Kidd's opinion. The ALJ summarized Dr. Kidd's records and opinions as follows:

> Consultant examiner, Huey Kidd, D.O. evaluated the claimant June 27, 2012 and the claimant reported no problems with his back to the consultant. Dr. Kidd noted the claimant was 6 feet tall, weighed 304 pounds with a BMI of 41.2 (Exhibit B4F). His blood pressure was 144/90. The claimant [sic] vision bilaterally without correction was 20/40, right eye 20/50 and left eye 20/70. His lungs were clear and he had a regular, rhythm and rate of the heart. Dr. Kidd described the claimant as morbidly obese. The examination revealed he had full range of motion and 5/5 strength of the lower extremities. Dr. Kidd indicated the claimant had osteoarthritic changes on physical examination. He conveyed the claimant's knee was quite enlarged and bowing inwardly. Dr. Kidd's [sic] found the claimant to be morbidly obese, hypertension, diabetes, significant right knee pain with lively[7]

---

[7] A review of Dr. Kidd's report indicates that the ALJ likely meant to say "likely" instead of "lively severe osteoarthritis." (*See* R. 392).

severe osteoarthritis.   He opined it would be very difficult for the claimant to work due to his knee problem.   Dr. Kidd made no mention and noted no problems with the claimant's back.   A couple of months after Dr. Kidd's [sic] provided his disabling opinion due to the claimant's knee, he reviewed the x-rays of the claimant's knee that revealed normal joint spaces bilaterally and mild to moderate osteoarthritic changes (Exhibit B7F).

…

Consultant examiner, Dr. Kidd found the claimant to be morbidly obese, hypertension, diabetes, significant right knee pain, lively[8] severe osteoarthritis.   He opined it would be very difficult for the claimant to work.   He provided this opinion prior to the review of x-rays of the claimant's knees.   A couple of months later, Dr. Kidd reviewed x-rays of the claimant's knees and they revealed normal joint spaces bilaterally with only **mild to moderate** osteoarthritic changes seen in both knees (Exhibit B7F) …

(R. 66 – 67, 69).[9]

Fulfilling the requirement that he "state with particularity the weight given to [Dr. Kidd's] medical opinions and the reasons therefor[,]" *Winschel*, 631 F.3d at 1179, the ALJ "provide[d] some weight to Dr. Kidd's opinion that he based on the findings of his examination[,]" explaining as follows:

[T]he undersigned notes x-rays results of the claimant's knees taken two months later usurp Dr. Kidd's prior disabling opinion.   The x-rays as read by Dr. Kidd showed only **mild to moderate** osteoarthritic changes [sic] as such, the undersigned concludes based on the radiographic evidence the claimant's knee condition is not disabling. As such, the undersigned concludes the radiographic findings do not support Dr. Kidd's original disabling conclusion for the claimant. Additionally, the undersigned notes the claimant is under 50 years of age and Dr. Kidd never considered sedentary work for the claimant. Based on the x-rays and other evidence of record, the undersigned affords some weight to Dr. Kidd's opinion; however, for the reason

---

[8] *See supra*, n.7

[9] Dr. Kidd also noted that Wilson was unable to heel walk, toe walk, squat, stand, or bend and touch his toes.   (R. 392).

previously mention great weight is not afforded to his opinion, as it is
not consistent with the record as a whole.

(R. 67, 69).

As the ALJ correctly noted, Dr. Kidd's finding of "likely severe osteoarthritis"
at his examination of Wilson was not bolstered by his own subsequent review of
Wilson's x-rays.[10]  Moreover, his brief, general opinion that "it will be very difficult
for this gentleman to work" (R. 392) does not rule out Wilson's ability to do <u>any</u>
work.  Thus, the ALJ's complaint that Dr. Kidd "never considered sedentary work"
was reasonable.   Finally, Dr. Kidd's opinion was on an issue reserved for the
Commissioner.  *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) ("A statement by a
medical source that you are … 'unable to work' does not mean that we will
determine that you are disabled[,]" as such statements are "not medical opinions, …
but are, instead, opinions on issues reserved to the Commissioner because they are
administrative findings that are dispositive of a case; i.e., that would direct the
determination or decision of disability.").  Such an opinion, even from a treating
source, is "never entitled to controlling weight or special significance."  SSR 96-5P,
1996 WL 374183 (S.S.A. July 2, 1996).   Though Wilson argues that Dr. Kidd's
assessment "noted medical signs and findings of osteoarthritis, including an
enlarged joint and inward bowing[,]" and was based on "a thorough personal
examination" (Doc. 13 at 8), substantial evidence supports the ALJ's decision to
assign only some weight to Dr. Kidd's opinion.  *See Ingram*, 496 F.3d at 1260 ("Even

---

[10] Even Wilson acknowledges that Dr. Kidd only "suspected" severe osteoarthritis prior to
viewing the x-rays.  (*See* Doc. 13 at 8).  The fact that Dr. Kidd apparently felt the need to
confirm this assessment by ordering x-rays further evidences the tentative nature of his
assessment.

if the evidence preponderates against the Commissioner's factual findings, we must affirm if the decision reached is supported by substantial evidence." (quotation omitted)).

Accordingly, the Court **OVERRULES** Wilson's assertions of error in Claim 1.

### B.   Claim 2 (Evaluating Impairments in Combination)

Wilson asserts in Claim 2 that the ALJ failed to evaluate his impairments in combination.  This claim is meritless under long-standing Circuit precedent.  At Step Three, the ALJ expressly stated that Wilson "does not have a impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in" the relevant listing.  (R. 63).  At Step Four, the ALJ stated that he had "considered all symptoms" in determining Wilson's RFC.  (R. 64). Though Wilson complains that such a statement "fail[s] to provide any comparative analysis of his severe impairments or their aggregate effect on his abilities[,]" the Commissioner correctly points out that such statements "constitute[] evidence that [the ALJ] considered the combined effects of Wilson's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (per curiam) (citing *Jones v. Dept. of Health and Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (per curiam) (holding that the following statement by an ALJ evidenced consideration of the combined effect of a claimant's impairments: while "[the claimant] has severe residuals of an injury to the left heel and multiple surgeries on that area, [the claimant does not have] an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4."

(emphasis removed))).  *Accord Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F.
App'x 949, 951-52 (11th Cir. July 24, 2014) (per curiam) (unpublished) ("In *Wilson*,
the ALJ acknowledged that Wilson suffered multiple injuries and then stated that
he 'did not have an impairment or combination of impairments' that equaled a
listing. 284 F.3d at 1224 (emphasis omitted). We held that statement was sufficient
to demonstrate that the ALJ considered the cumulative effect of the applicant's
impairments. *Id.* at 1224–25 … Despite Tuggerson–Brown's arguments to the
contrary, it is apparent from the face of the ALJ's decision and the RFC report
relied upon by the ALJ that the ALJ did, in fact, consider all medical evidence in
combination in concluding that Tuggerson–Brown was not disabled.  In performing
his analysis, the ALJ stated that he evaluated whether Tuggerson–Brown had an
'impairment or combination of impairments' that met a listing and that he
considered 'all symptoms' in determining her RFC.  Under our precedent, those
statements are enough to demonstrate that the ALJ considered all necessary
evidence. *See Wilson*, 284 F.3d at 1224–25.").

Indeed, "[t]he ALJ went beyond those statements in his analysis, specifically
discussing evidence of [Wilson]'s [knee impairment, obesity, and diabetes].  The
RFC report likewise addressed many of the same symptoms.  Accordingly, the
record sufficiently demonstrates that the ALJ properly considered all of [Wilson]'s
impairments, even those not specifically found to be severe, in reaching a conclusion
that []he was not disabled.  [Wilson] does not specifically challenge or assert [in
Claim 2] that the ALJ's ultimate conclusion was not based on substantial evidence

in some other regard …" *Tuggerson-Brown*, 572 F. App'x at 952.  Accordingly, the Court **OVERRULES** Wilson's assertions of error in Claim 2.

## C.  Claim 3 ("Pain Standard")

Claim 3 purports to assert errors in the ALJ's application of the three-part "pain standard," which applies when a claimant attempts to establish disability through his own testimony about his subjective symptoms.  *E.g., Wilson,* 284 F.3d at 1225.[11]  While Wilson prefaces this claim with case law generally discussing the "pain standard," his substantive analysis simply argues additional reasons why the ALJ was wrong to reject Dr. Kidd's opinion.  The Court has factored this additional argument into its discussion of Claim 1, *see supra.*  Because Wilson offers no substantive discussion of how the ALJ improperly applied the "pain standard," the Court **OVERRULES** his assertions of error in Claim 3.

## V.  <u>Conclusion</u>

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's June 25, 2015 final decision denying Wilson's applications for DIB and SSI benefits is **AFFIRMED** under 42 U.S.C. §§ 405(g) and 1383(c)(3).

---

[11] "The pain standard requires: '(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.' [*Wilson,* 284 F.3d at 1225].  If the ALJ determined that the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms, then the ALJ evaluates the extent to which the intensity and persistence of those symptoms limit her ability to work. 20 C.F.R. § 404.1529(b). At this stage, the ALJ considers the claimant's history, the medical signs and laboratory findings, the claimant's statements, statements by treating and nontreating physicians, and other evidence of how the pain affects the claimant's daily activities and ability to work. *Id.* § 404.1529(a)." *McMahon v. Comm'r, Soc. Sec. Admin.*, 583 F. App'x 886, 893 (11th Cir. Sept. 24, 2014) (per curiam) (unpublished)

Final judgment shall issue separately in accordance with this Order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 29th day of April 2016.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**